UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TAMMY L. HERRING )<br>)<br>　Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>　Defendant. ) | Civil No. 3:04-1093<br>Judge Nixon<br>Magistrate Judge Brown |

# MEMORANDUM ORDER

Pending before the Court is Plaintiff's Motion for Judgment Based Upon the Administrative Record (Doc. No. 11), to which Defendant Commissioner of Social Security has responded in opposition (Doc. No. 13). Magistrate Judge Brown has issued a Report and Recommendation (Doc. No. 14) ("Report"), to which Defendant has objected (Doc. No. 15) and Plaintiff has responded (Doc. No. 16). The Court has reviewed the Magistrate Judge's Report and the objections and responses thereto. For the reasons stated below, the Court ADOPTS the Magistrate Judge's Report and thus GRANTS Plaintiff's Motion in part by VACATING the decision of the Administrative Law Judge and REMANDING for further administrative proceedings, to include updating the medical record, rehearing, and issuance of a new decision on Plaintiff Tammy Herring's application.

## I.    BACKGROUND

Tammy L. Herring ("Herring" or "Plaintiff") filed an application with the Social Security Administration for disability insurance benefits on June 8, 2001. (AR 87-89, 530-33.) The

Plaintiff alleged that January 25, 2000 was the onset date of her disability. (AR 94.) Following denials at the initial (AR 73-77) and reconsideration (AR 80-81) stages of agency review, Plaintiff filed a timely request for hearing before an Administrative Law Judge ("ALJ") (AR 82). After a hearing on September 5, 2003 (AR 37-68), the ALJ issued a written decision denying Plaintiff's applications on March 18, 2004 (AR 13-24). The Plaintiff timely appealed the ALJ's decision to the Appeals Council and on October 27, 2004, the Appeals Council denied Plaintiff's request for review. (AR 5-7.) As a consequence, the ALJ's decision stands as Defendant's final determination in this case. This civil action was thereafter timely filed, and the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

The Plaintiff is a female in her mid-forties, who has a high school education and has previously worked as a medical file clerk, day-care worker, and cashier. (AR 17.) Plaintiff first sought out psychiatric help from Dr. Narciso Gaboy in August 2000. (AR 489-90.) Plaintiff reported that her marriage was failing, she complained of inability to sleep, loss of appetite, loss of weight, and problems concentrating on a task. (AR 489.) She was depressed most of the day, but not every day, and she was not suicidal. (Id.) Her mental status exam revealed that she was pleasant and cooperative, her speech was fluent, spontaneous, and goal directed, and she had a logical thought process and a normal thought content; however, her mood was angry and dysphoric, her affect was anxious, worried and nervous. (AR 490.) Plaintiff's current stressor was the separation from her spouse, although Dr. Gaboy noted other potential stressors. (Id.) Dr. Gaboy diagnosed major depressive disorder recurrent moderate. (Id.) He also gave her a current Global Assessment of Functioning ("GAF") score of 31-40, and a previous score of 41-

45.¹  Dr. Gaboy saw Plaintiff again in November 2000, and noted that his long-term goal was to stabilize her anxiety level.  (AR 487.)

On August 14, 2001, Plaintiff underwent a psychological evaluation by Dr. Thelma Foley, a consultative examiner.  (AR 324-26.)  Plaintiff reported that she had been receiving psychological treatment for approximately nine years from Dr. Michael McElroy and that she was hospitalized for two days in 1997 for depression.  (AR 324.)  Dr. Foley found that Plaintiff was cooperative, her affect and mood were appropriate, and her speech was spontaneous, coherent, and relevant.  (AR 325.)  Plaintiff denied suicidal attempts or ideation.  (Id.)  Hallucinations, delusions, or other psychotic symptoms could not be elicited.  (Id.)  Dr. Foley did not diagnose Plaintiff with any mental impairment and found that Plaintiff would be able to manage her funds, understand and remember instructions, relate adequately to supervisors and coworkers, would be aware of normal hazards, and be able to travel independently.  (AR 326.)

Plaintiff resumed treatment with Dr. Gaboy in April 2002, and reported that the medication Dr. Gaboy had prescribed was helping her depression and she was not anxious.  (AR 483.)  Dr. Gaboy, however, believed it was necessary to continue working on stabilizing her anxiety (AR 483.)  Shortly thereafter on May 15, 2002 Plaintiff was treated at Tennessee Christian Medical Center after taking an overdose of Ativan tablets.  (AR 382.)  Plaintiff reported that she had been depressed off and on for some time, that she was hospitalized for depression in 1997, that currently she cried a lot, her sleep was off, her energy was way down,

---

¹ A patient's GAF score reflects the "clinician's judgment of the individual's overall level of functioning" on a 0-100 scale.  A 51-60 rating indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning, (e.g., few friends, conflicts with peers or co-workers).  Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 30, 32 (4th ed. 1994).

and her appetite was also down. (Id.) She was diagnosed with major depressive disorder, recurrent and dependent personality. (AR 383.)

Notes from Dr. Gaboy dated June 13, 2002, indicate that Plaintiff reported several episodes of anxiety and feeling depressed, that her admission to the hospital was due to panic from the loss of her job, a break up with her partner, and the fact that her daughter was leaving her. (AR 481.) In July 2002, Dr. Gaboy found that Plaintiff's "lack of progress in treatment goal is because of her pain and poor support system." (AR 479.) In August 2002, Dr. Gaboy noted that Plaintiff was having short-term memory problems, and that she "was not achieving her treatment goal . . . because of her poor support system, financial difficulty and medical problems." (AR 477.) In March 2003, Dr. Gaboy changed her depression and anxiety medication because the prior medication was not helping. (AR 475.) Dr. Gaboy also opined that Plaintiff was "difficult to manage as she is very sensitive to and [a] non-responder to some of the antidepressant." (Id.) A month later on April 15, 2003, Dr .Gaboy indicated that an adjustment in medication had made Plaintiff sleep better, be calmer, and not be preoccupied with thoughts pertaining to her divorce and problems with her children. (AR 469.)

The record indicates that in May 2003, Plaintiff made another suicidal gesture by taking a non-toxic overdose and then going to the emergency room. (AR 518, 498.) She began seeking discharge soon after admission and she was discharged three days later. (AR 519.) She was released in stable condition but with a poor prognosis, with a GAF of 55 at discharge, and 60 for the year 2003. Id.

While Plaintiff reports that she received extensive psychological treatment from Dr. McElroy over a number of years, the administrative record contains only one document from Dr. McElroy. (AR 525-29.) The administrative record does contain a number of references to an

-4-

extended treatment relationship with Dr. McElroy including: a record from Summit Medical Associates dated January 26, 1998 stating that she was seeing Dr. McElroy with her husband (AR 185); notes from Dr. Gaboy in August 2000 that mention a past treatment history with Dr. McElroy (AR 489); notes from Dr. Gaboy that the Plaintiff was receiving individual counseling from Dr. McElroy (AR 481); and a hospital discharge note saying that the Plaintiff had been with Dr. McElroy for eight years prior to admission (AR 519). Furthermore, Plaintiff's own disability benefits application filed on May 24, 2001 states, "I also see Dr. McElroy" and that "he will be helpful to this case." (AR 102.)

The sole document submitted by Dr. McElroy consists of two parts and is signed and dated June 2, 2003. (AR 525-29.) The first part of the document is titled "Medical Opinion Re: Ability To Do Work-Related Activities (Mental)" and asks for the doctor to determine the patient's ability to function in a work setting. (AR 525.) Dr. McElroy found that out of a total of twenty-five categories, Plaintiff had "no useful ability to function" or was "unable to meet competitive standards" in twenty-four categories, and was seriously limited but not precluded in the remaining one area. (Id.) Dr. McElroy commented that Plaintiff had short and long term memory problems, and because of her depression and anxiety, even simple tasks are difficult for her to do. (Id.) He also commented that Plaintiff had "several hospitalizations" for suicidal ideation in the past year, as well as for anxiety and depression. (AR 526.) The second part of the document submitted by Dr. McElroy is a clinical summary form completed the same day. This form states that Plaintiff had attended 110 sessions of therapy with Dr. McElroy (twenty couple/family therapy sessions and ninety individual sessions). (AR 528.) Dr. McElroy recorded that Plaintiff had a GAF of 53 current and 55 for the past year. (Id.) Dr. McElroy also stated that Plaintiff continued to exhibit significant levels of depression and anxiety, failed to

-5-

improve on her suicidal tendencies, and has not developed coping skills to deal with her familial, anxiety, or suicide problems. (AR 529.)[2]

On March 18, 2004, the ALJ issued a written decision denying Plaintiff's applications. (AR 13-24.) The ALJ found that Plaintiff was not disabled because her "severe" impairments did not meet or equal in severity the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix One. (AR 23.) In addition, the ALJ found that Plaintiff's subjective allegations of disabling pain and functional limitations were not credible, and that she retained the residual functional capacity to perform light work, including her past work. (Id.) As part of his decision, the ALJ considered Plaintiff's mental impairments. (AR 20-21.) The ALJ acknowledged that Plaintiff had an "ongoing treatment relationship" with Dr. McElroy, a psychologist, and Dr. Gaboy, a psychiatrist. (AR 20.) The ALJ explained that Plaintiff had "an ongoing treatment relationship dating back to August 8, 1997, reportedly consisting of 150 scheduled visits, of which the claimant reportedly attended 110. Thus, Dr. McElroy reported treating the claimant, on average, about once or twice a month over the preceding 6 years." (Id.) The ALJ also noted that both Dr. Gaboy and Thelma Foley, Ed.D., who performed a consultative psychological exam in conjunction with Terry Edwards, Ed.D. on August 14, 2001, confirmed Plaintiff's extensive treatment sessions with Dr. McElroy. (Id.) Similarly, the ALJ acknowledged that Dr. Gaboy's treatment started in August 2000 and continued to at least April 2003. (Id.)

Notwithstanding the extensive treatment relationship, the ALJ decided that the opinions of Drs. McElroy and Gaboy would not be accorded significant weight in the decision. With

---

[2] The Magistrate Judge's Report discusses Plaintiff's physical ailments in depth, and the Court adopts the Magistrate Judge's recitation of these facts without further discussion.

regard to Dr. Gaboy, the ALJ held that "the weight of the evidence [does not] support the level of mental functional limitations assessed by Dr. Gaboy (GAF 31-45) in his August 23, 2000, evaluation." (Id.) With regard to Dr. McElroy, the ALJ found his medical opinion relating to work abilities to be "questionable, to say the least" because it appeared to the ALJ to be internally inconsistent. (AR 21.) That is, the ALJ found a GAF of 53-55, which demonstrates moderate limitations, was inconsistent with Dr. McElroy's "long list of areas with 'no useful ability to function,' or 'unable to meet competitive standards . . . .'" (Id.) In addition, the ALJ found that Dr. McElroy's assessment was not sufficiently supported by treatment records. (Id.) Thus, the ALJ did not accord significant weight to Dr. McElroy's opinion because of a "lack of immediate support from the treatment record of the same date and lack of longitudinal support stemming from the absent treatment records . . . ." (Id.) In declining to give Dr. McElroy's opinion significant weight, the ALJ stated:

> [N]o other treatment records from Dr. McElroy are in the file, not even the record from the reported May 20, 2003, session. And these records have not been submitted despite the fact that more than 6 months have now passed from the date of the hearing on September 5, 2003.
>
> . . .
>
> Claimants are ultimately responsible for obtaining and providing the evidence to support their claims for benefits. 20 CFR 404.704. This expectation is especially reasonable in this case, where: 1) the claimant is represented by an attorney; 2) there has been a 6-month opportunity following the hearing to either secure and submit supporting evidence from an individual reported to be a long term treatment source or explain why it could not be secured and submitted; and 3) a potentially dispositive opinion has been secured and submitted from the medical source.

-7-

(Id.) Accordingly, the ALJ relied solely on the consultative examiner's psychological exam, which came to a very different conclusion than both the opinions of Drs. McElroy and Gaboy. (Id.)

Plaintiff alleges, among other things, that the ALJ erred in finding that she had no "severe" mental impairment and in his treatment of Plaintiff's mental health treating sources. (Doc. No. 14 at 23.)[3] The Magistrate Judge agreed with the Plaintiff's objections and concluded that "the ALJ's treatment of plaintiff's mental impairments was deficient, and specifically that his failure to subpoena the treatment notes of Dr. McElroy, plaintiff's long time treating psychologist, was an abuse of discretion requiring reversal and remand." (Id.)

Defendant objects to the Magistrate Judge's Report. First, Defendant contends that Plaintiff bears the burden of establishing disability by furnishing the necessary evidence and failed to fulfill that burden by not submitting Dr. McElroy's treatment records. (Doc. No. 15 at 3.) Second, Defendant asserts that contrary to the Magistrate Judge's opinion, the ALJ sufficiently discharged his duty of inquiry. (Id. at 6-7.) Third, Defendant argues that the ALJ adequately treated Drs. McElroy's and Gaboy's opinions and there was substantial evidence in the record for the ALJ to determine that Plaintiff's mental impairment was not "severe." (Id. at 4-5.) The Court will address Defendant's objections de novo. 28 U.S.C. § 636(b)(1).

## II.  STANDARD OF REVIEW

---

[3] Plaintiff also alleges that the ALJ's finding of an RFC for light work and evaluation of the credibility of Plaintiff's subjective complaints were in error. As the issue of Plaintiff's mental impairments and mental health treating sources is dispositive of this appeal, the Court does not rule on these remaining objections. (Doc. No. 14 at 23.)

The Court's review of the Commissioner's decision is limited to the record from the administrative hearing process. Jones v. Sec'y, 945 F.2d 1365, 1369 (6th Cir. 1991). Title II of the Social Security Act (the "Act") provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, the Court's review is limited to "a determination of whether substantial evidence exists in the record to support the Secretary's decision and to a review for any legal errors." Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." Her v. Comm'r, 203 F.3d 388, 389 (6th Cir. 1999) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Comm'r, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. Hurst v. Sec'y, 753 F.2d 517 (6th Cir. 1985).

### III. ANALYSIS

#### A. THE ALJ ABUSED HIS DISCRETION IN FAILING TO SUBPOENA DR. MCELROY'S POTENTIALLY DISPOSITIVE TESTIMONY OR TREATMENT NOTES

Generally, a person seeking disability benefits is required to bear the burden of proving by sufficient evidence that he or she is entitled to disability benefits. Landsaw, 803 F.2d at 214 ("[T]he burden of providing a complete record, defined as evidence complete and detailed

enough to enable the [Commissioner] . . . to make a disability determination, rests with the claimant."); see also 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof . . . ."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are . . . disabled. . . . This means that you must furnish medical and other evidence . . . ."); 20 C.F.R. § 404.704 ("[Y]ou will be responsible for obtaining and giving evidence to us [to prove your eligibility].")

Separate and apart from Plaintiff's burden, Social Security ALJs have a duty "to inquire fully into each issue. [ALJ's are] . . . held to a high standard in discharging this fact-finding requirement." Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980). As the Magistrate Judge noted, 20 C.F.R. § 404.1512(d) specifically promises to assist the Plaintiffs in gathering medical records:

> *Our responsibility*. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you filed your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

In order to carry out his or her duty of inquiry, the ALJ has the authority pursuant to 20 C.F.R. § 404.950(d) to issue a subpoena mandating submission of documents or testimony of witnesses:

> (d) Subpoenas. (1) When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing.
>
> (2) Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge or at one of our offices at least 5 days before the hearing date . . . .

-10-

(emphasis added). Therefore, an ALJ can, in his or her discretion, subpoena records or testimony that will adequately develop the record.

In addition, the Sixth Circuit has noted that there are special circumstances in which the Commissioner or other adjudicatory official has a heightened duty to develop the record in order to establish the full presentation of the case. Such duty attaches "when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures . . . ." Nabours v. Commissioner, 50 Fed. App'x 272, 275 (6th Cir. 2002). However, this heightened duty generally only applies to cases where a claimant is not represented by counsel. Ball v. Sec'y of Health and Human Servs., No. 90-6059, 1991 WL 66051, at *4 (6th Cir. April 29, 1991).

Defendant argues that Plaintiff had the burden of proof and was required to submit Dr. McElroy's treatment notes if she wanted the ALJ to consider them. As Plaintiff did not submit these notes, Plaintiff failed to carry her burden. Defendant further contends that because Plaintiff was represented by counsel, the heightened duty of inquiry does not apply, and the ALJ had no duty to request Dr. McElroy's notes. Defendant is correct that the heightened duty of inquiry does not apply to this case, as Plaintiff was represented by counsel. Defendant is incorrect, however, that Plaintiff failed to carry her burden of proof or that the ALJ had no duty to request Dr. McElroy's notes.

Plaintiff's counsel stated that he did request Dr. McElroy's treatment notes (Doc. No. 12 at 17), but that Dr. McElroy submitted a treatment summary and medical source statement of ability to do work related activities in lieu of such records (AR 525-29). The crux of the problem appears to lie in the form authorizing the release of medical records. The Social Security Administration requires a claimant seeking disability benefits to complete Form SSA-

-11-

827, entitled "Authorization To Disclose Information To The Social Security Administration (SSA)." (Doc. No. 8, Ex. 1.) Form SSA-827 authorizes the disclosure of a claimant's medical records. With regard to medical records relating to psychological, psychiatric or other mental impairment(s), however, the authorization form specifically excludes "psychotherapy notes" as defined in 45 C.F.R. § 164.501. (Id.) This exclusion of psychotherapy notes is in response to the requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the regulations promulgated thereunder. The regulatory definition of "psychotherapy notes" is as follows:

> Psychotherapy notes means notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint, or family counseling session and that are separated from the rest of the individual's medical record. Psychotherapy notes excludes medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: Diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date.

45 C.F.R. § 164.501 (emphasis added).

Plaintiff's counsel in making the request for treatment notes from Dr. McElroy based his client's authorization for the release of such records on form SSA-827. (Doc. No. 12 at 17.) Therefore, although the Magistrate Judge states that Dr. McElroy "evidently declined plaintiff's request to turn over his psycotherapy notes and other documentation of these therapy sessions" (Doc. No. 14 at 23), it appears to this Court that he was not authorized by Plaintiff to release such notes. In the alternative, Dr. McElroy perhaps did not believe that his notes fell within the exclusion in 45 C.F.R. § 164.501. Whatever the reason – Dr. McElroy's refusal to disclose the notes, Dr. McElroy's belief that his notes did not fall within § 164.501's exclusion or Plaintiff's inadvertent failure to permit the disclosure – the fact remains that Plaintiff's counsel

-12-

appropriately carried out his burden of <u>requesting</u> the notes.  As the Magistrate Judge pointed out, Plaintiff's counsel cannot be faulted "for using the government's authorization form as a model for his own."  (Doc. No. 14 at 26.)[4]

Furthermore, Plaintiff considered Dr. McElroy's treatment summary and medical source statement of ability to do work related activities in lieu of the treatment notes to be sufficient to carry her burden.  Indeed, Dr. McElroy's summary was <u>more detailed</u> and <u>specific</u> than the consultative examiner's, Dr. Foley's, half page discussion of Plaintiff's "mental status" on which the ALJ based his decision.  (<u>Compare</u> AR 526-29 <u>with</u> AR 324-36.)  The detail and the specificity of the summary is underscored by the fact that the ALJ himself found Dr. McElroy's opinion to be "potentially dispositive."  (AR 21.)  Moreover, the Plaintiff raises the excellent point that "a detailed multi-page evaluation from a longtime treating source is of greater value than dozens, if not hundreds, of pages of possibly illegible treatment notes."  (Doc. No. 16 at 2.)

The need for Dr. McElroy's notes was entirely created by the ALJ.  The ALJ felt he needed the notes to corroborate Dr. McElroy's summary.  (AR 20-21.)  The ALJ believed Dr.

---

[4] The Magistrate Judge also correctly noted that

> HIPAA regulations clearly establish that <u>with the proper authorization</u>, a mental health care provider is <u>permitted</u> to disclose such notes to the individual who received the treatment.  45 C.F.R. §§ 164.502(a)(1)(i), 164.508(a)(2).  However, such disclosure would not have been <u>required</u>, even if plaintiff had specifically authorized and requested production of the "psychotherapy notes" made by Dr. McElroy, as the HIPAA regulations establish that patients have no right of access to such notes.  45 C.F.R. § 164.524 (a)(1)(i).  Nonetheless, it does not appear that Dr. McElroy has to this point even been authorized by plaintiff to produce his psychotherapy notes if he were so inclined, much less specifically requested to disclose those protected notes.
>
> (Doc. No. 14 at 26.)

McElroy's summary was "questionable" and internally inconsistent. (Id. at 21.) The ALJ, however, did not convey to Plaintiff that the information he had from Dr. McElroy was problematic, and that having Dr. McElroy's notes would resolve his doubts. While the Magistrate Judge faults Plaintiff's counsel for failing to request a subpoena, this Court finds the fault lies entirely with the ALJ. After having created a need for notes to support an opinion by a treating source that the ALJ already considered "potentially dispositive," the ALJ should have at the very least informed Plaintiff's counsel that he required the notes in order to make his decision. But at no point did the ALJ make such a request. At the hearing the ALJ questioned Plaintiff about Dr McElroy's treatment, but did not indicate to Plaintiff's counsel that he found the summary to be insufficient. (AR 54, 59.) Plaintiff's counsel was not aware that Dr. McElroy's summary was supposedly deficient until the decision was issued. Plaintiff's counsel cannot be expected to be clairvoyant; especially in a system in which the ALJ has the role of "inquisitor." As the ALJ alone created the need for the treatment records, he could have, and should have, requested Plaintiff to obtain the notes or, on his own initiative, issued a subpoena for the records or Dr. McElroy's testimony.

Importantly, as the Magistrate Judge notes, even with proper authorization, Dr. McElroy was not required to produce the notes. (Doc. No. 14 at 26.) The only method of obtaining these records, if Dr. McElroy declined (or continues to decline) to produce them after the proper disclosure authorization is given by Plaintiff, is through a subpoena accompanied by an order of the ALJ. (Doc. No. 14 at 27, citing 45 C.F.R. § 164.512(e); Kalinoski v. Evans, 377 F.Supp.2d 136, 139 n.3 (D.D.C. 2005).)

In sum, the Court finds the Magistrate Judge's Report to be well-founded and adopts his recommendation. The case should be remanded for further administrative proceedings including

-14-

the issuance of a new decision in light of Dr. McElroy's notes, the production of which should first be sought by Plaintiff's explicit authorization request, and then if necessary, by issuance of an administrative order and subpoena at government expense.

**B.     THE ALJ FAILED TO ADHERE TO THE TREATING PHYSICIAN STANDARD**

In the process of determining disability, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" Wilson v. Comm'r Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). The Social Security Administration defines "treating source" as one's "own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502.

If a treating source's opinion is not given controlling weight, the ALJ must "always give good reasons . . . for the weight [given to the Plaintiff's] treating source physician." 20 C.F.R. § 404.1527(d)(2). Pursuant to this mandate, decisions denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion <u>and the reasons for that weight</u>." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996), quoted in Wilson, 378 F.3d at 544 (emphasis added). Thus, if a treating physician's opinion is not accorded controlling weight, "an ALJ <u>must</u> apply certain factors--namely, [1] the length of the treatment relationship and the frequency of examination, [2] the nature and extent of the treatment relationship, [3 the]

-15-

supportability of the opinion, [4 the] consistency of the opinion with the record as a whole, and [5] the specialization of the treating source--in determining what weight to give the opinion." Wilson, 578 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)) (emphasis added). In addition to applying the factors to explain why a treating physician's opinion is not accorded controlling weight, the ALJ must cite the evidence he or she uses to reject the treating physician's opinion. Wilson, 378 F.3d at 546. Finally, the ALJ's discussion of the treating physician's opinion must be not be ambiguous. Id.

Dr. McElroy is Plaintiff's longstanding treating psychologist, having seen Plaintiff on over one hundred occasions since August 1997. (AR 528.) In light of this, the ALJ should have accorded Dr. McElroy treating source status, however, at no point in his decision does the ALJ explicitly do that. The ALJ stated that "because of lack of immediate support from the treatment record of the same date and lack of longitudinal support stemming from the absent treatment records that reportedly date back to at least 1997, the [medical opinion] from Dr. McElroy is not accorded significant weight in this decision." (AR 21.) From this explanation, it is ambiguous whether the ALJ did not accord Dr. McElroy treating source status or accorded Dr. McElroy treating source status but did not give his opinion controlling weight for the failure to submit the notes. Similarly, with respect to Dr. Gaboy, the ALJ noted that Plaintiff was treated by Dr. Gaboy from August 2000 to April 2003. (AR 20.) As a result, Dr. Gaboy also should have received treating source status. The ALJ, however, failed to explicitly accord Dr. Gaboy treating source status. The failure to explicitly accord Drs. McElroy and Gaboy treating source status, and the ambiguity in dealing with Dr. McElroy's opinion contravenes Wilson. 378 F.3d at 546.

Furthermore, in declining to give the opinions of Drs. McElroy and Gaboy controlling weight, the ALJ did not adequately review the five Wilson factors. Id. at 544, 546. Specifically, the ALJ failed to review factor (4) regarding the "consistency [of the opinions] with the record as

a whole." Id. at 544. The ALJ failed to analyze whether Dr. McElroy's opinion was supported by the record as a whole, and summarily dismissed Dr. Gaboy's opinion as being inconsistent with other evidence from the record.

First, the ALJ found that Dr. McElroy's opinion was internally inconsistent because a GAF rating of 53-55 was "hardly consistent with the degree of limitations described in Dr. McElroy's source statement." (AR 21.) Although there appears to be a discrepancy, this confusion was discussed at trial. The vocational expert testified, "you can make some assumptions that at the time [the GAF] was assigned, the person wasn't working so that wasn't considered but rather how they were functioning within their environment at home." (AR 66.) In Dr. McElroy's medical source statement, he was specifically asked to offer an opinion about Plaintiff's capabilities "[t]o determine [Plaintiff's] ability to do <u>work-related activities on a day-to-day basis in a regular work setting</u>." (AR 525) (emphasis added). Thus, it is possible, and quite likely, that there is no discrepancy between Dr. McElroy's GAF assessment and his medical source statement because the statements are for different environments.

Second, the ALJ did not compare Dr. McElroy's opinion to either Dr. Foley's or Dr. Gaboy's opinions. Had he done so, he would have found that both Drs. McElroy and Gaboy had similar opinions (perhaps negating the need for Dr. McElroy's psychotherapy notes). Dr. McElroy stated that Plaintiff had memory problems, her depression and anxiety prevented her from performing simple tasks and she had been admitted for suicidal ideation. (AR 525-26.) Importantly, Dr. McElroy noted Plaintiff's failure to improve on her suicidal tendencies and her failure to develop coping skills to deal with her situational stressors. (AR 529.) This is entirely consistent with Dr. Gaboy's assessment. Dr. Gaboy's treatment notes demonstrate that the Plaintiff suffers from major depressive disorder, she was hospitalized for depression in 1997, she suffers from anxiety attacks, and she has made suicidal gestures or attempts. (AR 468-90.) Dr.

-17-
Case 3:04-cv-01093   Document 17   Filed 03/10/06   Page 17 of 19 PageID #: 68

Gaboy's notes also show that Plaintiff's condition did not always improve despite her medication and counseling sessions (Id. (showing "no change" or "worsening" in her ability to adapt to change and deal with situational stressors).) In August 2002, Dr. Gaboy stated that Plaintiff was "not achieving her treatment goal . . . because of her poor support system, financial difficulty and medical problems." (AR 477.) This report was followed by another in March 2003 in which Dr. Gaboy found that Plaintiff "is difficult to manage as she is very sensitive to and [a] non-responder to some of the antidepressant." (AR 475.) Dr. Gaboy also noted at the conclusion of the majority of their sessions that Plaintiff was not clinically stable and required further assistance. (AR 468-90.)

Third, the ALJ did compare Dr. Gaboy's opinion to Dr. Foley's opinion. In doing so, the ALJ rejected all of Dr. Gaboy's treatment notes as being inconsistent with Dr. Foley's opinion, even though his rejection was based on one evaluation that Dr. Gaboy completed in August 2000. (AR 21.) The ALJ utterly failed to consider all of Dr. Gaboy's treatment records; the very value of a treating source's opinion. This is ironic as the ALJ rejected Dr. McElroy's opinion because it lacked supporting treatment notes, but then proceeded to ignore Dr. Gaboy's notes. Moreover, the "other" evidence the ALJ relied on was Dr. Thelma Foley's opinion subsequent to a consultative exam on August 14, 2001. (AR 324-26.) It is important to note that this exam took place before Plaintiff's suicide attempts in May 2002 and May 2003. Instead of analyzing the historical data provided by Plaintiff's treating psychiatrist and psychologist, the ALJ conclusively relied on Dr. Foley's snapshot without any further explanation. This is in direct contradiction of Wilson.

In sum, had the ALJ properly applied the five factors listed in Wilson in determining what weight to give the opinions of Drs. McElroy and Gaboy, he may have come to a different

conclusion. (See Doc. No. 14 at 29 n.4 (Magistrate Judge finding ALJ's opinion "patently erroneous.").)

IV. **CONCLUSION**

In light of the foregoing, Plaintiff's Motion for Judgment on the Administrative Record is **GRANTED**, and the decision of the Commissioner is **REVERSED** and the cause **REMANDED** for further administrative proceedings, to include if necessary the issuance of a subpoena for the psychotherapy notes and other treatment records of Plaintiff's treating psychologist.

It is so ORDERED,

Entered this the ___9th___ day of ___March___, 2006.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT